UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

United States of America,

        Plaintiff,

vs.                          REPORT AND RECOMMENDATION

Todd Douglas Miller

        Defendant.              Crim. 05-147(02) (MJD/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motion of the Defendant to Suppress Evidence Obtained as a Result of Search and Seizure. A Hearing on the Motion was conducted on July 13, 2005, at which time, the Defendant appeared personally, and by Andrea K. George, Assistant Federal Defender, and the Government appeared by Thomas M. Hollenhorst, Assistant United States Attorney. For reasons which follow, we recommend that the Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure be denied.

## II. Factual Background

The Defendant has been charged with one Count of possession of cocaine base, in violation of Title 21 U.S.C. §§844(a); one Count of aiding and abetting possession with intent to distribute cocaine, in violation of Title 21 U.S.C. §841(a)(1), and (b)(1)(C); and one Count of conspiracy to commit a number of offenses involving the possession and distribution of controlled substances, in violation of Title 21 U.S.C. §846, as well as Title 21 U.S.C. §§841(a)(1)(A), (b)(1)(A), 859(a), 860(a), 861(a)(1), and (a)(3). The events which gave rise to the conspiracy charge are alleged to have taken place on a continuing basis from the early 1990s until May 3, 2005, while the events which gave rise to the possession, and aiding and abetting charges, are alleged to have taken place on June 9, 2001, and November 28, 2001, respectively. All of these events are alleged to have occurred in this State and District.

The Defendant has moved to Suppress evidence obtained as a result of a traffic stop, and subsequent vehicle search, which occurred on November 28, 2001, upon the assertion that the law enforcement officers lacked probable cause to execute the stop and search. At the Hearing on the Motion, testimony was adduced from Steve Kritzeck ("Kritzeck"), who is a Detective with the Hennepin County Sheriff's Office, and who had previously been assigned to the narcotics unit, which investigates controlled substance transactions. Kritzeck testified that, on November 28, 2001, he

was contacted by a Confidential Informant ("CI"), who advised that he was at "Senior G's" bar, which was located near the intersection of Lake Street and Cedar Avenue, in Minneapolis, Minnesota, and that he had learned of three individuals, who were present at "Senior G's," and who had traveled from the Red Lake Indian Reservation, in order to purchase drugs from an individual described as a Hispanic male. The CI informed Kritzeck that, of the three individuals, two were males and one was a female, and all were described as being Native Americans. The CI further informed Kritzeck that the three individuals intended to return to the Red Lake Indian Reservation shortly after the completion of the drug transaction.

Kritzeck testified that the CI had provided reliable information in the past, dating back to 1998; that information provided by the CI had resulted in Federal Indictments on approximately five (5) or six (6) occasions; and that, as of the date on which this information was provided, the CI had never given inaccurate information.[1] He also testified that a high degree of drug activity was known to take place at "Senior G's."[2]

---

[1] Kritzeck's testimony suggests that the CI stopped cooperating with law enforcement officers sometime in 2003.

[2] Kritzeck testified that "Senior G's" is no longer in business.

Based on the information provided by the CI, Kritzeck, along with several other officers, set up surveillance near "Senior G's," at approximately 5:30 o'clock p.m. Shortly thereafter, Kritzeck observed a Chevrolet Suburban type vehicle, which matched the description provided by the CI, and bore license plates issued by the Red Lake Indian Reservation. The Suburban parked near the vicinity of Senior G's, and two men and one woman, who were later identified as Warren Blackcloud ("Blackcloud"), the Defendant, and Rhonda Garrigan ("Garrigan"), emerged from the vehicle, and entered "Senior G's." Kritzeck testified that he believed that these individuals were of Native American heritage, based on their physical characteristics.

A short time later, the Defendant and Blackcloud returned to the Suburban, and drove to a residence located at 3320 21st Avenue South, in Minneapolis, and entered that residence. They were then observed leaving the house, and driving into an alleyway, where they parked the vehicle. After spending approximately seven (7) minutes in the alleyway, the two men returned to "Senior G's," and re-entered the bar.

Several minutes later, the officers observed the Defendant, Blackcloud, and Garrigan, exit the bar, along with two other women. The two women were transported to a nearby residence, then the Suburban proceeded to westbound Interstate 94.

Testimony from Kritzeck suggests that Interstate 94 is the most direct route from Minneapolis, when destined for the Red Lake Indian Reservation.

Based on the information provided by the CI, and the officers' independent observations, one of the officers contacted law enforcement personnel in Wright County, Minnesota, and sought their assistance in effectuating a traffic stop on the Suburban. The Wright County officers were informed that the Suburban was traveling towards Wright County, on Interstate 94, and that there was probable cause to stop and search the Suburban for evidence of a drug transaction. The Wright County officers then stopped the Suburban, and detained Blackcloud, Garrigan, and the Defendant, until the arrival of the Hennepin County officers. The Hennepin County officers proceeded to search the Suburban, and discovered a controlled substance -- cocaine -- in the center console area of the vehicle. At the time of the stop, the Suburban was being driven by Garrigan, the Defendant was a passenger in the front seat, and Blackcloud was a passenger in the back seat. The registered owner of the vehicle was determined to be Sheldon Cook ("Cook"), who was apparently a

friend of the Defendant, and who was recently convicted of Federal drug offenses.[3] See, United States v. Cook, Crim. File No. 04-237 (DSD/RLE).

### III. Discussion

As an initial matter, the Government has argued that the Defendant does not have "standing" to challenge the traffic stop, and subsequent search of the Suburban.[4] In support of its argument, the Government notes that the Defendant was not the driver of the Suburban, and has made no showing of any ownership interest in that vehicle. The Defendant contends that the vehicle was entrusted to him, Blackcloud, and Garrigan, by its registered owner -- Cook -- who the Defendant describes as a

---

[3]While the Defendant urges that he and Cook were friends, there is nothing on the Record to establish as much, short of counsel's representations. However, since the asserted friendship, between Cook and the Defendant, has no bearing on our analysis, we need not ascertain the accuracy of the Defendant's representation.

[4]With respect to "standing," we follow our Court of Appeals' approach, as explained in United States v. Green, 275 F.3d 694, 698 n. 3 (8th Cir. 2001):

> We use the term "standing" as a shorthand reference to the issue of whether the defendants' Fourth Amendment interests were implicated by the challenged government actions. "Technically, the concept of 'standing' has not had a place in Fourth Amendment jurisprudence * * * since the Supreme Court in Rakas v. Illinios, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 386 (1978), indicated that matters of standing in the context of searches and seizures actually involved substantive Fourth Amendment law." United States v. Sanchez, 943 F.2d 110, 113 n. 1 (1st Cir. 1991).

friend. Thus, the Defendant maintains that he had a "legitimate expectation of privacy" in the vehicle, which affords him standing to challenge the vehicle's search.

"Fourth Amendment rights are personal rights that may not be asserted vicariously." United States v. Barragan, 379 F.3d 524, 529 (8th Cir. 2004), citing Rakas v. Illinois, 439 U.S. 128, 133-134 (1978). "Consequently," in order to assert a Fourth Amendment right, "the defendant must demonstrate 'a legitimate expectation of privacy in the area searched or the item seized.'" United States v. Davis, 103 F.3d 660, 671 (8th Cir. 1996), quoting Rakas v. Illinois, supra at 138-144; see United States v. Bach, 310 F.3d 1063, 1066 (8th Cir. 2002).

"To establish a legitimate expectation of privacy, the defendant must demonstrate: (1) a subjective expectation of privacy; and (2) that this expectation is one that society is prepared to recognize as objectively reasonable." United States v. Green, 275 F.3d 694, 699 (8th Cir. 2001), citing United States v. Muhammad, 58 F.3d 353, 355 (8th Cir. 1995); see Minnesota v. Carter, 525 U.S. 83, 88 (1998); Rakas v. Illinois, supra at 143, n. 12. Under this analysis, both the Supreme Court, and our Court of Appeals have held, that a passenger of a vehicle does not have standing to challenge a search of the vehicle where he cannot show a possessory or privacy interest in the vehicle. Rakas v. Illinois, supra at 148-149; United States v. Barragan,

supra at 529(In the absence of an ownership interest, "a mere passenger * * * could not claim a legitimate privacy interest in one of his 'effects' * * * and he lacks standing to challenge the search of the vehicle."); United States v. Green, supra at 699 ("As a passenger, [the defendant] does not have a right to challenge the search of the car.").

The Defendant has not shown any ownership, possession, or control of the Suburban, and therefore, has failed to establish that he had a legitimate expectation of privacy in that vehicle.[5] Rather, the Record reflects that Cook was the owner of the vehicle and, at the time of the search, the vehicle was being driven by Garrigan. Thus, the Defendant does not have standing to challenge the search of the vehicle. While not argued by the Defendant, we recognize that, "even though [the Defendant] lacked a possessory or property interest in the motor vehicle that would enable him to directly challenge the search, he may still contest the lawfulness of his own detention and seek

---

[5]The Defendant suggests that the references in Kritzeck's police report to Blackcloud's statement, "that he and Miller then proceeded to drive around south Minneapolis smoking joints of marijuana," and Garrigan's comment that "she along with Todd Miller and Loren Blackcloud, left the area of Bemidji and drove down to the Minneapolis area," allow a reasonable inference that the Defendant had been driving Cook's vehicle, or had been entrusted, by Cook, with possession of the vehicle. See Government Exhibit 1, at p. 00054. We are unable to draw any such inference on this ethereal thread of logic.

to suppress evidence as the fruit of his illegal detention." United States v. Green, 275 F.3d 694, 699 (8th Cir. 2001), citing United States v. Kreisel, 210 F.3d 868, 869 (8th Cir. 2000); United States v. Ameling, 328 F.3d 443, 446 n. 3 (8th Cir. 2003); United States v. Lyton, 161 F.3d 1168, 1170 (8th Cir. 1998).  However, such an argument would be unavailing, as the investigating officers plainly had a reasonable suspicion to stop the Suburban, in which the Defendant was a passenger.  See United States v. Ameling, supra at 447-48.  We do not separately pursue that line of inquiry, for we conclude that the investigating officers had probable cause for the stop, and the search, which is a more exacting standard than that which justifies an investigatory stop.  Id. at 447 ("While 'an officer's reliance on a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.'"), quoting United States v. Arvizu, 534 U.S. 266, 274 (2002).  Accordingly, we proceed to the issue of probable cause.

    A.    Standard of Review.  "Searches without a warrant are per se unreasonable subject to a few well established exceptions." United States v. Hill, 386 F.3d 855, 858 (8th Cir. 2004).  One exception to the Warrant requirement is the "automobile exception," "which authorizes officers to search a vehicle without a warrant if they

have probable cause to believe the vehicle contains contraband." <u>Id.</u>, at 558, citing <u>United States v. Wells</u>, 347 F.3d 280, 287 (8th Cir. 2003). As our Court of Appeals has reiterated:

> As long as law enforcement officials have probable cause, they may search an automobile without a warrant under the automobile exception. See Pennsylvania v. Labron, [518 U.S. 938, 940] (1996); [United States v.] Martinez, 78 F.3d [399] at 401 [(8th Cir. 1996)]. Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place. See Illinois v. Gates, [462 U.S. 213, 238] (1983).

<u>United States v. Fladten</u>, 230 F.3d 1083, 1085 (8th Cir. 2000).

Of course, "[p]robable cause demands not that an officer be 'sure' or 'certain' but only that the facts available to a reasonably cautious man would warrant a belief 'that certain items may be contraband or stolen property or useful as evidence of a crime.'" <u>Id.</u>

      B.    <u>Legal Analysis</u>. Plainly, the automobile exception applies to the search of the Suburban, and therefore, the search will be permissible so long as it was supported by sufficient probable cause. When probable cause is based on information provided by an informant, "'a key issue is whether that information is reliable.'" <u>United States v. Koons</u>, 300 F.3d 985, 993 (8th Cir. 2002), quoting <u>United States v. Fulgham</u>, 143 F.3d 399, 401 (8th Cir. 1998); see also, <u>United States v. Reivich</u>, 793

F.2d 957, 959 (8th Cir. 1986)("[T]he informant's reliability, veracity, and basis of knowledge are relevant considerations -- but not independent, essential elements -- in finding probable cause."). As our Court of Appeals has stated:

> In [Illinois v.] Gates, the Supreme Court explained that an informant's reliability and basis of knowledge "are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." * * * 462 U.S. at 233, 103 S.Ct. at 2329.

United States v. Olson, 21 F.3d 847, 850 (8th Cir.), cert. denied, 513 U.S. 888 (1994). As a result, "'an informant's basis of knowledge [is] an important consideration, but not a rigid requirement, in the probable cause determination.'" Id., citing United States v. Anderson, 933 F.2d 612, 615 (8th Cir. 1991).

Consequently, the "core question" is whether the information provided by the informant was reliable. See, United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993)("The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable."). Moreover, "[t]he statements of a reliable confidential informant are themselves sufficient to support probable cause for a search warrant." United States v. Wright, 145 F.3d 972, 975 (8th Cir. 1998), cert. denied, 525 U.S. 919 (1998). In turn, an informant is deemed reliable

when his/her statements are corroborated by independent evidence.  See, United States v. Carpenter, 341 F.3d 666, 669 (8th Cir. 2003)("[C]orroboration of minor, innocent details may support a finding of probable cause."), citing United States v. Tyler, 238 F.3d 1036, 1039 (8th Cir. 2001); see also, United States v. Koons, supra at 993 ("'Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence.'"), quoting United States v. Fulgham, supra at 401; United States v. Formaro, 152 F.3d 768, 770 (8th Cir. 1998)("[C]orroboration of the confidential informant's information by independent investigation is an important factor in the calculus of probable cause.").

Here, we find the Kritzeck reasonably relied on the information provided by the CI, in his determination that evidence of a controlled substance transaction was likely contained within the Suburban.  The Defendant challenged Kritzeck's reliance on the CI's information, since Kritzeck did not ask, and did not know the precise basis for the CI's knowledge, and since none of the officers observed a Hispanic male approach any of the three individuals, or observe the occurrence of drug transaction.  However, under the law of this Circuit, such information is not necessary to establish the CI's reliability, where that reliability is reflected in the Record in totality.  See United

States v. Lucca, 377 F.3d 927, 933 (8th Cir. 2004)(rejecting argument that probable cause was wanting because the Affidavit in support of a Search Warrant "did not provide the factual basis for the CRI's knowledge."); United States v. Wright, supra at 975 (same). Instead, "[t]he reliability of a confidential informant can be established if that person has a history of providing law enforcement officials with truthful information." United States v. Wright, supra at 975, citing United States v. Williams, supra at 593.

Kritzeck testified that the CI had provided law enforcement officers with reliable information for approximately three years prior to the November 28, 2001, and that his information had resulted in a number of Federal Indictments. Kritzeck also testified that, up to that point, the CI had never provided incorrect information. Therefore, based on the CI's history of providing reliable information, the officers were justified in relying on the CI's information, in concluding that there was probable cause to believe that the Suburban contained evidence of an illegal drug transaction.

In addition, some of the details provided by the CI were independently corroborated by the officers' own surveillance. Specifically, the Suburban matched the description of the vehicle described by the CI, and the individuals who were

observed inside of the vehicle appeared to be of the same gender and heritage as was described by the CI.  As well, Senior G's was known, by Kritseck, to be a location where drug trafficking occurred.  Moreover, the license plate on the Suburban proved to have been issued by the Red Lake Indian Reservation where, according to the CI, the persons who were to effectuate the drug purchase were traveling from, and returning. While no drug transaction was specifically observed, Kritzeck testified that the movements of the Defendant, Blackcloud, and Garrigan, were consistent with those of persons who were engaged in a narcotics transaction, in that the transacting parties often arrive at different times, and vary their whereabouts and movements. Lastly, the route of the Suburban, along westbound Interstate 94, was consistent with the representation of the CI that the three individuals planned to travel back to the Red Lake Indian Reservation, after the completion of the controlled substance transaction.[6]

We are not confronted, here, with an anonymous tip, which found no independent corroboration.  Rather, we have an experienced CI, who proved to be

---

[6]The Defendant criticizes the CI's reliability, as the CI had related that the three suspects were at Senior G's when he contacted Kritseck, and Kritseck testified that, when he pursued the CI's tip and traveled to Senior G's, he observed the three arrive after him.  Kritseck testified, however, that the Defendant, and one or more of his companions, had left Senior G's on at least one occasion, and we have no reason to disregard the CI's reliability on the assumption that they had not left that location on a previous occasion, before Kritseck arrived on the scene.

reliable in all of his confidences to law enforcement in the past, and who shared information with Kritseck, which was confirmed, in many respects, by the officers, including Kritseck, who were conducting the surveillance of the three suspects. Therefore, based upon the totality of the circumstances, we find that the search of the Suburban for evidence of a narcotics transaction was adequately supported by probable cause, and we recommend that the Defendant's Motion to Suppress the evidence, which was secured in the search of the Suburban, be denied.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket Nos. 35] be denied.

Dated:  July 22, 2005        *s/Raymond L. Erickson*
                                          Raymond L. Erickson
                                          UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and

Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than August 8, 2005**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than August 8, 2005**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.